## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **MARIE M. NARCISSE, as Temporary Administrator of the Estate of Ashia Narcisse, deceased, and as Guardian of Fhabian Fernandez and Isaiyah Fernandez, the minor children of Ashia Narcisse,** | **CIVIL ACTION NO.** |
| **Plaintiff,** | |
| **v.** | |
| **GENESYS HEALTH ALLIANCE f/k/a SOUTHERN CORRECTIONAL MEDICINE, PETER WROBEL, M.D., SHAD STORMANT, M.D., Nurse JANETTE WEST, Nurse JEAN VAUGHAN, Nurse JACQUELINE ROWLAND, Nurse VICTORIA LILES, DUSTIN DOWLING, N.P., HOUSTON COUNTY, GEORGIA, CULLEN TALTON, individually and in his official capacity as Sheriff of Houston County, Georgia, KODY BARFIELD, individually and in his official capacity as a Houston County Deputy, C.J. ROSS, individually and in his official capacity as a Houston County Deputy and JOHN DOES 1-6,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## COMPLAINT

COMES NOW, Plaintiff Marie M. Narcisse, as Temporary Administrator of the Estate of Ashia Narcisse, deceased, and as Guardian of Fhabian Fernandez and Isaiyah Fernandez, the minor children of Ashia Narcisse (hereinafter "Plaintiff"), and files this Complaint against Defendants Genesys Health Alliance f/k/a Southern Correctional Medicine, Peter Wrobel, M.D., Shad Stormant, M.D., Nurse Janette West, Nurse Jean Vaughan, Nurse Jacqueline Rowland, Nurse Victoria Liles, Dustin Dowling, N.P., Houston County, Georgia, Cullen Talton, Individually and in his Official Capacity as Sheriff Of Houston County, Georgia, Kody Barfield, individually and in his official capacity as a Houston County Deputy, C.J. Ross, individually and in his official capacity as a Houston County Deputy and John Does 1-6, (collectively "Defendants"), to recover damages for the violation of Ashia Narcisse's Constitutional and state rights, showing the Court as follows:

## NATURE OF THE CASE

This is a 42 U.S.C.§ 1983 Federal Civil Rights Action and state law medical malpractice action arising from the wrongful death of Ashia Narcisse caused by the unreasonable acts, omissions, inadequate care, and deliberate indifference of Defendants during the arrest of Ms. Narcisse by Houston County deputies and during her incarceration at the Houston County Detention Center ("Jail"). Plaintiff alleges that the named individual Defendants employed by the Houston County Detention

Center's   contract medical provider, Defendant Genesys Health Alliance, f/k/a Southern Correctional Medicine ("Genesys"), were deliberately indifferent to Ms. Narcisse's serious mental and physical health needs in violation of the Eighth and/or Fourteenth Amendments, and because said Defendants were private contractors rather than public officials, they are not entitled to assert the defense of qualified immunity.  Plaintiff also alleges a pendent state law claim for medical negligence against Defendant Genesys for its failure directly and vicariously through its agents and/or employees, to comply with the standard of care applicable to the medical and nursing professions generally under like and similar conditions.

Plaintiff further alleges that Sheriff Talton and the named individual Defendants employed by the Houston County Sheriff's Office and/or Houston County, Georgia, were deliberately indifferent to Ashia Narcisse's serious mental and physical medical needs in violation of the Eighth and/or Fourteenth Amendments for which Sheriff Talton is liable in his individual capacity for both his personal involvement in the denial of Ashia Narcisse's rights as well as his role as supervisor in causing or directing such rights to be violated.

Ashia Narcisse was a 34-year-old female with bi-polar disorder.   On December 26, 2021, Ms. Narcisse suffered a bi-polar episode at the home she shared with Plaintiff in which she became delusional and threatened suicide and to burn the house.  Houston County Sheriff's Office was called to the scene and notified of Ms.

3

Narcisse's condition, specifically that she was bi-polar.  Houston County Deputy

Kody Barfield initially responded and was also made aware that Ms. Narcisse was

bi-polar and during his interaction with Ms. Narcisse at the home, he witnessed

behavior by Ms. Narcisse which clearly indicated she suffered from a serious mental

health condition.  Deputy Barfield was later joined by Houston County Deputy C.J.

Ross and the two of them placed Ms. Narcisse under arrest and forcibly carried her

from the house and placed her into Deputy Barfield's patrol car.  While Deputy

Barfield and Deputy Ross were forcibly taking Ashia from the house she suffered a

cut on her right leg.  Rather than place Ashia in the care of EMS personnel who had

arrived on the scene, Deputy Barfield and Deputy Ross placed Ms. Narcisse in the

back of Deputy Barfield's patrol car and transported her to the Houston County

Detention Center without getting treatment.

Upon arrival at the Houston County Detention Center, Ashia still exhibited

behavior indicating a mental disorder however she was not provided any medical

treatment.  In violation of Houston County Sheriff's Office's and Houston County

Detention Center's policies and procedures as well as the requirements and

responsibilities of Genesys, generally and pursuant to its contract with Houston

County, Ms. Narcisse did not receive a medical assessment upon being booked or

any physical or mental health evaluation whatsoever despite Defendants' knowledge

that she suffered from a mental disorder and was exhibiting abnormal behavior.

4

Instead, Ms. Narcisse was placed in jail cell 13A in the intake area so that she could be closely watched and observed by Houston County Sheriff's Office/Houston County Detention Center employees. Defendants' excuse for not following proper policies and procedures by failing to conduct a medical and mental health assessment and evaluation at the time of intake was that Ashia refused the medical assessment. At no time did Defendants seek the assistance of any outside mental health or medical facilities or agencies in order to make sure that a proper medical assessment, evaluation and history was conducted. Ashia remained an inmate in the intake area of the Houston County Detention Center cell 13A from the night of her arrest on December 26, 2021, until the early morning hours of January 4, 2022, when she was found unresponsive on the floor of her cell. Throughout her detention at the Houston County Detention Center, Defendants failed to provide any medical or mental health treatment for Ms. Narcisse despite clearly observing her abnormal behavior indicating that she suffered from a mental illness as Defendants had been previously advised by her family. Such actions included Ms. Narcisse appearing to have a conversation with an individual in her cell when no one was present, aggressive behavior, talking incoherently, standing, and jumping up and down on her mattress, refusing to communicate or respond to questions and refusing to eat or drink. At no time during her stay did Defendants provide any emergency mental health services or have a physician see Ashia or consult with a physician or other medical or mental

health professional for assistance in securing mental health and medical services for Ashia.

During the time of Ashia's incarceration at the Houston County Detention Center, Defendant Sheriff Talton had in place a policy at the Detention Center which required that an inmate be referred to the medical staff at the Detention Center if the inmate refused nine (9) consecutive meals. Defendants Genesys and Sheriff Talton and the employees at the Houston County Detention Center were well aware that Ashia continuously refused meals and, in fact, refused at least thirteen (13) of twenty-four (24) meals while incarcerated. Despite this fact, she was not referred for medical or mental health treatment either within or outside of the Detention Center. During her entire stay at the Detention Center Ashia continued to exhibit behavior indicating that she suffered from a mental disorder and in the late night hours of December 31, 2021 or early morning hours of January 1, 2022, she tried to run out of her cell when deputies brought a meal to her and was forcibly pushed back into the cell and down on the floor by two Houston County deputies. Ashia also never received any treatment for the laceration to her right leg suffered when Defendants Deputy Barfield and Ross forcibly removed her from her residence. In further violation of Houston County Sheriff's Office and Houston County Detention Center policies and procedures, Ashia was not monitored every thirty (30) minutes as required. At approximately 5:20 a.m. on the morning of January 4, 2022, two (2)

Houston County Sheriff's deputies went to Ashia's jail cell to retrieve a dinner tray and discovered her unconscious and non-responsive on the floor.  The last time Ashia had been observed alive was at 1:44 a.m. that same morning, approximately four (4) hours earlier.  Deputies attempted CPR to no avail and EMS were notified although it was clear that Ashia was deceased.  She was subsequently taken to Perry Hospital where she was pronounced dead.  An autopsy was performed which indicated the cause of death as pulmonary thromboembolism due to deep vein thromboses of the legs with other significant condition being dehydration.  These conditions were the result of Ashia's lack of nutrition and hydration during the course of her incarceration which was a direct result of the unreasonable acts, omissions, and deliberate indifference of Defendants in failing to provide necessary medical and mental health treatment to Ashia and as further set forth herein.

## A. <u>JURISDICTION & VENUE</u>

1.

This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action arises under 42 U.S.C. § 1983 and alleges violations of rights guaranteed to Ashia Narcisse by virtue of the Eighth and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction of Plaintiff's related state law claims, including but not limited to

violations of rights guaranteed by the Constitution of the State of Georgia, by virtue of 28 U.S.C. § 1367.

2.

Venue is proper in the Middle District of Georgia, Macon Division, as all acts and omissions complained of occurred in Houston County, Georgia, and one or more Defendants reside in this District.

3.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

## B. **PARTIES**

4.

Plaintiff Marie M. Narcisse is the Temporary Administrator of the Estate of Ashia Narcisse and Guardian of Fhabian Fernandez and Isaiyah Fernandez, the minor children of Ashia Narcisse, who suffered and ultimately died as a result of unreasonable acts, omissions, and deliberate indifference of the named Defendants while an inmate at the Houston County Detention Center.

5.

Defendant Genesys Health Alliance, LLC ("Genesys") is a Georgia for-profit limited liability corporation formerly known as Southern Correctional Medicine, which does and at all times relevant hereto did business in the State of Georgia with

8

its principal address at 1718 Reynolds Street, Waycross, Georgia 31501.  Defendant Genesys may be served with process by serving its registered agent, Janet Boyd, at 1718 Reynolds Street, Waycross, Georgia 31501 or by request for waiver of service via First Class Mail sent to said address.

6.

Defendant Peter Wrobel, M.D. ("Dr. Wrobel") is a medical doctor licensed to practice medicine in the State of Georgia and at all times relevant hereto was an employee or agent of Defendant Genesys who provided medical services and care to inmates at the Houston County Detention Center.  Defendant Dr. Wrobel may be served with process by request for waiver of service via First Class Mail to Defendant Genesys' offices at 1718 Reynolds Street, Waycross, Georgia 31501, in order to avoid the inconvenience of being served personally at his home or other place of employment.

7.

Defendant Shad Stormant, M.D. ("Dr. Stormant") is a medical doctor licensed to practice medicine in the State of Georgia and at all times relevant hereto was an employee or agent of Defendant Genesys who provided medical services and care to inmates at the Houston County Detention Center.  Dr. Stormant may be served with process by request for waiver of service via First Class Mail to Defendant Genesys' offices at 1718 Reynolds Street, Waycross, Georgia 31501, in order to

9

avoid the inconvenience of being served personally at his home or other place of employment.

8.

Defendant Nurse Janette West ("Defendant West") is a nurse licensed to practice nursing in the State of Georgia and at all times relevant hereto, was an employee and/or agent of Defendant Genesys who provided medical care to inmates at the Houston County Detention Center during the time Ashia Narcisse was an inmate there.  Upon information and belief, Defendant West is currently employed at the Houston County Detention Center and may be served with process there at 203 Perry Parkway, Perry, Georgia 31069.

9.

Defendant Nurse Jacqueline Rowland ("Defendant Rowland") is a nurse licensed to practice nursing in the State of Georgia and at all times relevant hereto was an employee and/or agent of Defendant Genesys who provided medical care to inmates at the Houston County Detention Center at the time Ashia Narcisse was an inmate there.  Defendant Rowland may be served with process at 105 Yarrow Boulevard, Bonaire, Georgia 31005 or by request for waiver of service via First Class Mail to this address, in order to avoid the inconvenience of being served personally.

10.

Defendant Nurse Victoria Liles ("Defendant Liles") is a nurse licensed to practice nursing in the State of Georgia and at all times relevant hereto was an employee and/or agent of Defendant Genesys who provided medical care to inmates at the Houston County Detention Center at the time Ashia Narcisse was an inmate there. Defendant Liles may be served by request for waiver of service via First Class Mail to Defendant Genesys' offices at 1718 Reynolds Street, Waycross, Georgia 31501, in order to avoid the inconvenience of being served personally at her home or other place of employment. Defendant Liles may also be served at 306 Warner Robins Highway, Hawkinsville, Georgia 31036.

11.

Defendant Dustin Dowling, N.P. ("Defendant Dowling") is a nurse licensed to practice nursing in the State of Georgia and at all times relevant hereto was an employee and/or agent of Defendant Genesys who provided medical care as a nurse practitioner to inmates at the Houston County Detention Center at the time Ashia Narcisse was an inmate there. Defendant Dowling may be served by request for waiver of service via First Class Mail to Defendant Genesys' offices at 1718 Reynolds Street, Waycross, Georgia 31501, in order to avoid the inconvenience of being served personally at her home or other place of employment. Defendant Dowling may also be served at 1144 El Curtis Road, Nicholls, Georgia 31554.

11

12.

Defendant Houston County, Georgia ("Defendant Houston County) is a duly created political subdivision of the State of Georgia and is charged with the responsibility of operating the Houston County Detention Center.  Defendant Houston County has the capacity to sue and be sued and may be served with process by serving the Chairman of the Houston County Board of Commissioners, Dan Perdue, as the Chief Executive Officer at his office located at 200 Carl Vinson Parkway, Warner Robins, Georgia 31088.

13.

Defendant Cullen Talton is the duly elected sheriff of Houston County, Georgia ("Defendant Talton"), having served as Sheriff at all relevant times through the present date, was and is charged with the responsibility of operating the Houston County Detention Center and supervising its officers, employees, and agents. Defendant Talton was and is responsible for, and is the final policy maker for the supervision, administration, policies, practices, customs and operations of the Houston County Sheriff's Office and the Houston County Detention Center at all times pertinent hereto.  Defendant Talton is sued in his individual capacity and in his official capacity.  Defendant Talton may be served with process at the Houston County Sheriff's Office located at 202 Carl Vinson Parkway, Warner Robins,

Georgia 31088 or by request for waiver of service sent to him via First Class Mail at said office.

14.

Defendant Kody Barfield ("Defendant Barfield") was at all times relevant hereto a deputy sheriff, employee, and/or agent of Defendant Houston County and/or Defendant Talton.  Upon information and belief, Defendant Barfield is a resident of Houston County, Georgia and is sued in his individual capacity and his official capacity.  Defendant Barfield may be served with process at the Houston County Sheriff's Office located at 202 Carl Vinson Parkway, Warner Robins, Georgia 31088 or by request for waiver of service sent to him via First Class Mail at said office.

15.

Defendant Deputy C.J. Ross ("Defendant Ross") was at all times relevant hereto a deputy sheriff, employee, and/or agent of Defendant Houston County and/or Defendant Talton.  Upon information and belief, Defendant Ross is a resident of Houston County, Georgia and is sued in his individual capacity and his official capacity.  Defendant Ross may be served with process at the Houston County Sheriff's Office located at 202 Carl Vinson Parkway, Warner Robins, Georgia 31088 or by request for waiver of service sent to him via First Class Mail at said office.

16.

Defendant Deputy John Doe 1 was at all times relevant hereto an employee and/or agent of Defendant Houston County and/or Defendant Talton. John Doe 1 is sued in his/her individual capacity and his/her official capacity.

17.

Defendant Deputy John Doe 2 was at all times relevant hereto an employee and/or agent of Defendant Houston County and/or Defendant Talton. John Doe 2 is sued in his/her individual capacity and his/her official capacity.

18.

Defendant Deputy John Doe 3 was at all times relevant hereto an employee and/or agent of Defendant Houston County and/or Defendant Talton. John Doe 3 is sued in his/her individual capacity and his/her official capacity.

19.

Defendant John Doe 4 was at all times relevant hereto an employee and/or agent of Defendant Genesys and involved in providing medical care and treatment to inmates at the Houston County Detention Center. John Doe 4 is sued in his/her individual capacity and his/her official capacity.

20.

Defendant John Doe 5 was at all times relevant hereto an employee and/or agent of Defendant Genesys and involved in providing medical care and treatment

to inmates at the Houston County Detention Center.  John Doe 5 is sued in his/her

individual capacity and his/her official capacity.

21.

Defendant John Doe 6 was at all times relevant hereto an employee and/or

agent of Defendant Genesys working as a professional healthcare provider at the

Houston County Detention Center for the purpose of providing medical care and

treatment to inmates at the Houston County Detention Center.  John Doe 6 is sued

in his/her individual capacity and his/her official capacity.

22.

Defendants are subject to the venue and jurisdiction of this Court.

23.

At all times relevant and material to the allegations of this Complaint, all

Defendants acted under color of law.

24.

The affidavits of Dr. Jeffrey E. Keller and Angela D. Goehring, R.N., M.S.A.,

C.C.H.P. are attached hereto and although not required in Federal Court, are filed

contemporaneously with this Complaint in full compliance with O.C.G.A. § 9-11-

9.1.  Said affidavits set forth at least one negligent act or omission of Defendants and

deviations and violations of the standard of care by Defendant physicians,

nurses/nurse practitioners.

15

## C.  **FACTUAL ALLEGATIONS**

### 25.

On December 26, 2021, shortly after 9:00 p.m., Defendant Barfield responded to a 911 call made by the sister of Ashia Narcisse, Ghilda Narcisse, to come to the residence at 2110 Marshallville Road that she shared with Ashia Narcisse, their mother, Marie Narcisse, and Ashia Narcisse's two children, Fhabian Fernandez and Isaiyah Fernandez.  The 911 call taker was informed that Ashia Narcisse was bi-polar and was threatening to slit her throat, stated that she was practicing voodoo and had started a fire in her downstairs room in an attempt to burn the house.  When Defendant Barfield arrived at the residence, he was again informed by Ghilda Narcisse that her sister, Ashia Narcisse, was bi-polar and was attempting to set the home on fire.

### 26.

Defendant Barfield proceeded into the house and found Ashia Narcisse sitting on the floor at the foot of her bed.  Defendant Barfield attempted to question Ashia about the events taking place, asked her name but she did not respond to either request.  There was a piece of cloth which had been burned along with a cigarette lighter and a bottle of rubbing alcohol near Ashia.  Defendant Barfield continued to question Ashia and she continued not to respond or move.

16

27.

As Ashia continued to be unresponsive, Defendant Barfield grabbed her by the shoulders and, according to him, tapped her on the shoulders to get her attention. According to Defendant Barfield, Ashia became extremely hostile, made her hands into a fist and began screaming at him incoherently and said he was trying to rape her. According to Defendant Barfield, Ashia began snatching away from him and was preparing to attack him so he then instructed Ashia to put her hands behind her back. Ashia refused.

28.

When Ashia refused to put her hands behind her back, according to Defendant Barfield she turned to attack him, and he took her down to the floor and attempted to restrain her as she screamed incoherently and flailed her arms and legs about during the entire altercation. According to Defendant Barfield, Ashia would speak as if she was talking to someone who was not in the room and resisted all of his commands.

29.

As Defendant Barfield was struggling with Ashia on the floor, Defendant Ross arrived and assisted Defendant Barfield in forcing Ashia's hands behind her back after which she was then handcuffed.

30.

Because Ashia refused Defendant Barfield and Defendant Ross' repeated commands to stand up and walk to Defendant Barfield's patrol car, they forcibly carried her out of the house during which she sustained a laceration to her right leg that apparently occurred as she wrapped her legs around the front doorframe while holding onto the wall to prevent them from carrying her outside.  While outside, Defendants Barfield and Ross forcibly carried Ashia to Defendant Barfield's patrol car and forced her into the back seat.

31.

According to Defendant Barfield, Ashia was seen by EMS personnel at the scene who treated her for what Defendant Barfield described as a small cut on her leg.

32.

In violation of the Houston County Sheriff's Office's policies, Defendant Barfield and Defendant Ross did not seek other medical treatment, medical or mental health evaluation for Ashia. Instead, they transported her to the Houston County Detention Center to be booked although it was clear that Ashia was still episodic and exhibiting abnormal and irrational behavior.

33.

Despite Defendant Barfield and Defendant Ross' knowledge that Ashia was bi-polar and their firsthand observations of her erratic and abnormal behavior clearly indicating that she was suffering from a mental condition, she was not taken to a hospital or other medical facility for treatment and evaluation.

34.

Once at the Houston County Detention Center, Ashia was forcibly carried into the jail after which Defendant Barfield charged her with Arson in the First Degree, two counts of Obstruction, one for himself and the other for Defendant Ross, on the basis that she physically fought with them and refused to obey their commands and a final charge of criminal trespass-damage.

35.

Upon information and belief, Defendants Liles and Rowland were called to do the initial required intake assessment on Ashia but failed to do so presumably because Ashia refused.  Despite the knowledge of Ashia's abnormal behavior and that she was bi-polar, Defendant Genesys, its agents and employees, including but not limited to Defendants West, Vaughan, Rowland, Liles and Dowling, as well as employees of the Houston County Detention Center, failed to perform an initial medical and mental health assessment of Ashia and failed to obtain a medical history.  Defendants failed to transport Ashia to a medical facility or seek the services

of any outside agencies in order to obtain a medical history and perform a medical assessment and mental health evaluation of Ashia.

36.

As a result of Defendants inaction as set forth herein, Ashia did not receive medical treatment for her physical or mental health condition.

37.

Because of Ashia's abnormal and irrational behavior as observed by Houston County Detention Officers and employees of the Houston County Sheriff's Office as well as employees and/or agents of Defendant Genesys including the individual nurses named herein, Ashia was placed in Cell 13A, a cell in the intake area of the Houston Detention Center, so that she could be closely watched and monitored.

38.

Ashia Narcisse remained in custody at the Houston County Detention Center from the night of her arrest on December 26, 2021, until her death on January 4, 2022.  During the course of her stay, Ashia refused several meals including drink which was well known to the nursing staff, including but not limited to Defendants West, Vaughan, Rowland, Liles, and  Dowling, and Houston County Detention Center staff.  Houston County Detention Center records regarding Ashia Narcisse document only two (2) instances where she was observed drinking fluids, the amount of which was undetermined.

39.

Upon information and belief, Defendant Dr. Wrobel was the designated medical physician for the Houston County Detention Center during the time Ashia Narcisse was an inmate.

40.

Upon information and belief, Defendant Dr. Stormant was the designated medical physician for the Houston County Detention Center during the time Ashia Narcisse was an inmate.

41.

At no time during the course of Ashia Narcisse's detention at the Houston County Detention Center did Defendants Dr. Wrobel or Dr. Stormant prescribe any medical treatment, mental health treatment, evaluation, assessment or recommend transfer to a hospital or mental health facility in order to provide necessary medical treatment for Ashia Narcisse to address her physical and mental health conditions.

42.

At no time during Ashia Narcisse's detention at the Houston County Detention Center did Defendant Genesys, its agents and/or employees including but not limited to Defendant West, Defendant Vaughan, Defendant Rowland, Defendant Liles, or Defendant Dowling conduct a medical assessment and evaluation of Ashia Narcisse or provide any medical treatment including mental health treatment.

21

43.

At no time during Ashia Narcisse's detention at the Houston County Detention Center did Defendant Genesys, its agents and/or employees, including but not limited to Defendant West, Defendant Vaughan, Defendant Rowland, Defendant Liles, or Defendant Dowling, conduct a medical assessment and evaluation of Ashia Narcisse, or notify any physician that Ashia Narcisse had refused a medical assessment and medical treatment.

44.

At no time during Ashia Narcisse's detention at the Houston County Detention Center did Defendant Genesys, its agents and/or employees including but not limited to Defendant West, Defendant Vaughan, Defendant Rowland, Defendant Liles, or Defendant Dowling conduct a medical assessment and evaluation of Ashia Narcisse, or advise any physician or other medical or mental health person or entity that Ashia was continuously refusing to eat and/or drink while incarcerated.

45.

After Ashia was placed in Cell 13A in the intake area at the Houston County Detention Center following her arrest on December 26, 2021, she did not receive any medical treatment for the injury to her right leg that occurred when she was forcibly taken from her home by Defendants Barfield and Ross.

46.

At no time did the staff and employees at the Houston County Detention Center and Houston County Sheriff's Office refer Ashia to the medical staff for treatment despite her continued abnormal, irrational and erratic behavior and despite their knowledge that she was bi-polar and repeatedly refusing meals, and despite their knowledge that Ashia had an open sore on her right leg.

47.

Ashia never received any medical treatment for her physical injuries, nor did she receive any treatment to address her mental health condition from any Defendants during her detention at the Houston County Detention Center. As evidence of her abnormal, irrational, and erratic behavior indicating that she suffered from a mental health condition such as bi-polar, she was observed in her cell talking aloud as if she was having a conversation with someone when there was no one in her cell other than herself.

48.

On the night of December 31, 2021 and early morning hours of January 1, 2022, Ashia attempted to run out of her cell when Houston County Detention Center employee Corporal Michael Fritz opened the cell in order to deliver a meal which Ashia ultimately refused. Deputy Fritz, along with Deputy Zachariah Filipovich pushed Ashia back into the cell and down onto the floor. She was not provided with

any medical treatment or evaluation for injuries suffered when she was pushed down to the floor.

49.

Further evidence of Ashia's abnormal, irrational, and erratic behavior which clearly indicated that she was suffering from a severe mental health condition as documented in the Houston County Detention Center records are:

12/26/21 – she refused to answer questions on how she obtained the injury to her right leg.  Defendant Rowland advised Ashia that medical could address the wound and notify provider if she processes with medical.  She did not speak and was then admitted to intake.

12/27/21 – Uncooperative, will not talk to anyone.  Refused to process.

12/28/21 – Note to use caution when dealing with this inmate.  Aggressive tendencies.

12/28/21 – Uncooperative, will not make sense when asked questions.

12/29/21 – Still refusing to complete new arrival intake booking process or medical screening.  Has been uncooperative, she is not speaking and refusing to shower.  She refused two (2) meals today (breakfast and lunch) but has been observed drinking fluids.  Medical (Nurse West) (Defendant West) was advised and stated to monitor.  Use caution/aggressive tendencies.

12/29/21 – She is still behaving abnormally, refused to eat breakfast and lunch today.

12/30/21 – Still refusing to complete new arrival intake booking process or medical screening.  Has been uncooperative, she is not speaking and refusing to shower.  She refused all three meals (12/29/21).  She had been awake and standing on her bunk all night.  Still not eating, sixth meal missed in a row.

12/31/21 – Further processed except medical, she has an open sore wound on her right leg and is refusing treatment, medical is aware.  She is still not eating and has missed a total of six (6) as of shift change.

12/31/21 – LPN Wood conducts pill call, escort Deputy Couch, no refusals for meds.   Stopped at Cell 13A, ask if Narcisse, Ashia wanted to be checked out for any possible injuries from being pushed back into her cell.  Narcisse refused.  She is now on a styrofoam tray and two (2) deputies must be present when opening cell door.

1/2/22 – Refused breakfast, making a total of four (4) meals she has not eaten as of 1/2/22.

1/3/22 – Use caution.  Refused dinner, making a total of five (5) meals missed.

1/3/22 – Still uncooperative and refusing, received a shower this morning and her cell was cleaned, she attempted to rush out of cell on 12/31/21, use caution/treat

as Supermax, styrofoam tray ordered but she refused breakfast and lunch today, meals refused up to seven (7) meals as of shift change today.

50.

At approximately 5:20 a.m. on the morning of January 4, 2022, Ashia Narcisse was discovered on the floor of her cell unresponsive, eyes fixed, pupils non-reactive to light, skin cold to touch and no sign of life noted.  CPR was attempted by Houston County Deputies and nurses but no to avail.  EMS was notified and Ashia was taken to Perry Hospital where she was pronounced deceased.

51.

Prior to the time Ashia was discovered on the floor of her cell, the last time she had been checked was at 1:44 a.m., approximately 3 ½ hours earlier in violation of Houston County Sheriff's Office and Houston County Detention Center policy.

52.

Houston County Detention Center policies provide that: "detention staff shall not rely solely on closed circuit television to supervise inmates.  Due to the design of the detention center, direct, in person surveillance needs to be made of every person in the general population at staggered intervals of at least every thirty (30) minutes."  Houston County Detention Center staff and employees failed to follow this policy.

26

53.

At the time of Ashia's death on January 4, 2022, she had refused eight (8) consecutive meals.  Upon information and belief, Ashia declined thirteen (13) of twenty-four (24) food trays while at the Houston County Detention Center.

54.

According to Houston County Detention Center policy, if an inmate refused nine (9) consecutive meals the inmate would then be referred to medical for observation after which the inmate would be moved into medical for observation and a call to Georgia Crisis and Access Line would be made.  Ashia was never moved to medical for observation while at the Houston County Detention Center despite her continued refusal of most of the meals presented and at least eight (8) consecutive meals.

55.

An autopsy revealed that Ashia's death was the result of pulmonary thromboembolism due to deep vein thrombosis of the legs with other significant condition being dehydration. Pulmonary thromboembolism can be caused by dehydration as a result of lack of nutrition and fluids.

56.

Records of the Houston County Detention Center clearly show that Ashia Narcisse had an insufficient intake of food and fluids while incarcerated at the

Houston County Detention Center from December 26, 2021 to January 4, 2022, a period of approximately ten (10) days.

57.

As a direct and proximate result of the foregoing conduct of Defendants, Ashia Narcisse died.  Her death would not have resulted had her medical condition, including her mental health condition been properly managed and treated by Defendants, had Genesys, its agents and employees complied with the applicable standard of care and had Defendants not deprived her of constitutionally adequate and necessary medical care while incarcerated.

58.

The Houston County Sheriff's Office, Defendant Sheriff Talton, and Defendant Houston County have a persistent and widespread practice of:

(a) Failing to properly train and supervise deputies and detention officers as to the handling, treatment, and needs of mentally ill inmates and arrestees;

(b) Allowing deputies and detention officers to violate Houston County Sheriff's Office's own policies and procedures; and

(c) Failing to enforce policies, failing to properly train deputies and detention officers, and failing to properly discipline the same, thus creating a culture within the Houston County Sheriff's Office wherein violating citizens' civil rights is tolerated.

28

59.

Defendant Sheriff Talton, individually and in his official capacity, and Defendant Houston County have been aware of the widespread pattern and practice of past and present law enforcement misconduct regarding the handling, treatment, and needs of mentally ill inmates and arrestees.

60.

Defendant Sheriff Talton, individually and in his official capacity, and Defendant Houston County have persistently failed to take adequate disciplinary action against their officers, such that they have ratified the widespread unconstitutional custom of their deputies' mistreatment of mentally ill inmates and arrestees.

61.

Defendant Sheriff Talton's and Defendant Houston County's persistent and widespread failure to take adequate disciplinary actions against their deputies and detention officers' routine use of excessive force and mistreatment of mentally ill inmates and arrestees, properly supervise and train their deputies and officers, or enforce written policies resulted in the violation of Ashia Narcisse's constitutional rights and proximately caused her death and significant pre-death pain and suffering.

62.

The acts and omissions of Defendants Sheriff Talton and Houston County in violating Ashia Narcisse's basic rights guaranteed by the United State Constitution and the Constitution of the State of Georgia were the proximate cause of death, pain and suffering incurred by Ashia Narcisse.

63.

Defendants are jointly and severally liable for Ashia Narcisse's injuries, death and Plaintiff's damages.

### D.  CAUSES OF ACTION

### COUNT ONE
### 42 U.S.C. § 1983
### CLAIMS AGAINST DR. PETER WROBEL AND DR. SHAD STORMANT

64.

Plaintiff realleges and incorporates paragraphs 1-63 as if they were fully restated verbatim herein.

65.

As the designated physicians for inmates at the Houston County Detention Center at all times relevant to the incidents complained of herein, Defendants Dr. Wrobel and Dr. Stormant owed a duty to provide Ashia Narcisse medical care within the standard of care.

66.

As the employer or principal of Dr. Wrobel and Dr. Stormant, Defendant Genesys is liable for Dr. Wrobel's and Dr. Stormant's negligent acts and omissions.

67.

Dr. Wrobel was negligent in the care and treatment of Ashia Narcisse in at least the following respects:

(a)  Dr. Wrobel failed to provide necessary medical treatment to address the physical injuries and mental health condition of Ashia Narcisse;

(b)  Dr. Wrobel failed to have a medical assessment, including a medical history done on Ashia Narcisse;

(c)  Dr. Wrobel failed to have a mental health assessment performed on Ashia Narcisse despite the knowledge that Ashia Narcisse was bi-polar and exhibiting abnormal, irrational and erratic behavior;

(d)  Dr. Wrobel failed to have Ashia Narcisse evaluated by a mental health professional;

(e)  Dr. Wrobel failed to treat the sore/ulcer on Ashia Narcisse's right leg; and

(f)  Dr. Wrobel failed to prescribe appropriate treatment and therapies to ensure that Ashia Narcisse was receiving proper nutrition and hydration and otherwise address her failure to eat and drink while incarcerated.

68.

As a direct and proximate result of Dr. Wrobel's negligence, Ashia Narcisse suffered severe and painful injuries, and death.

69.

Dr. Stormant was negligent in the care and treatment of Ashia Narcisse in at least the following respects:

(a) Dr. Stormant failed to provide necessary medical treatment to address the physical injuries and mental health condition of Ashia Narcisse;

(b) Dr. Stormant failed to have a medical assessment, including a medical history done on Ashia Narcisse;

(c) Dr. Stormant failed to have a mental health assessment performed on Ashia Narcisse despite the knowledge that Ashia Narcisse was bi-polar and exhibiting abnormal, irrational and erratic behavior;

(d) Dr. Stormant failed to have Ashia Narcisse evaluated by a mental health professional;

(e) Dr. Stormant failed to treat the sore/ulcer on Ashia Narcisse's right leg; and

(f) Dr. Stormant failed to prescribe appropriate treatment and therapies to ensure that Ashia Narcisse was receiving proper nutrition and hydration and otherwise address her failure to eat and drink while incarcerated.

70.

As a direct and proximate result of Dr. Stormant's negligence, Ashia Narcisse

suffered severe and painful injuries, and death.

## **COUNT TWO**

### **42 U.S.C. § 1983**
### **CLAIMS AGAINST NURSES INCLUDING NURSE PRACTITIONER DOWLING AND THEIR EMPLOYERS**

71.

Plaintiff realleges and incorporates paragraphs 1-70 as if they were fully

restated verbatim herein.

72.

As Ashia Narcisse's medical providers, Defendant Nurses West, Vaughan,

Rowland, Liles and Nurse Practitioner Dowling, and other nurses responsible for the

medical care and treatment of Ashia Narcisse at the Houston County Detention

Center owed Ashia a duty to provide her nursing care within the standard of care.

73.

As the employer or principal of Nurses West, Vaughan, Rowland, Liles and

Nurse Practitioner Dowling, and other nurses at the Houston County Detention

Center, Defendant Genesys is liable for the nurse's and nurse practitioner's negligent

acts and omissions.  Nurses West, Vaughan, Rowland, Liles, and Nurse Practitioner

Dowling were negligent in at least the following respects:

33

(a) Failure to conduct a medical assessment and evaluation of Ashia Narcisse

(b) Failure to obtain a medical history on Ashia Narcisse;

(c) Failure to provide treatment to address Ashia's obvious mental condition as exhibited by her continuous abnormal, irrational and erratic behavior during the ten (10) day period she was incarcerated at the Houston County Detention Center;

(d) Failure to have Ashia Narcisse evaluated by a mental health professional despite their knowledge that she was bi-polar and was experiencing a serious mental condition while incarcerated at the Houston County Detention Center;

(e) Failure to provide a mental health assessment of Ashia Narcisse that would have been necessary to ascertain whether she was competent to refuse medical care;

(f) Failure to provide any medical care to Ashia Narcisse based upon Ashia's refusal of medical treatment;

(g) Failure to have Ashia transferred to an appropriate medical facility to address her mental health condition;

(h) Failure to treat the sore/ulcer on Ashia's right leg suffered when she was arrested and forcibly removed from her home by Defendants Deputies Barfield and Ross;

(i) Failure to properly monitor Ashia Narcisse while she was in her cell in the intake area of the Houston County Detention Center;

(j) Failure to notify the designated medical physician that Ashia was in need of immediate and emergency medical and mental health treatment;

(k) Failure to notify the designated medical physician that Ashia was refusing meals and hydration; and

(l) Failure to ensure that Ashia received proper intake of food and liquids during her incarceration at the Houston County Detention Center.

74.

As a direct and proximate result of the Defendant nurses' and nurse practitioner's negligence, Ashia Narcisse suffered severe and painful injuries, and death.

75.

In addition to being vicariously liable for the negligent acts and omissions of its agents and employees, Defendant Genesys is directly liable for its own negligence in failing to maintain proper protocols for ensuring that inmates at the Houston County Detention Center, such as Ashia Narcisse, received timely and necessary medical care including proper assessments and evaluations, referrals, and providing an overall level of care consistent with the standard of care and the duties owed under its contract with Houston County.

35

## COUNT THREE

## 42 U.S.C. § 1983
## CLAIMS AGAINST INDIVIDUAL MEDICAL PROVIDERS UNDER
## FEDERAL CIVIL RIGHTS LAW

76.

Plaintiff realleges and incorporates paragraphs 1-75 as if they were fully restated verbatim herein.

77.

To the extent that the medical negligence of Defendants Dr. Wrobel, Dr. Stormant, West, Vaughan, Rowland, Liles and Dowling was so deficient as to be tantamount to no care at all, or otherwise fell so far below the standard of care as to authorize a finding of deliberate indifference to serious medical needs, such individual medical providers are personally liable for their deliberate indifference under the Eighth and/or Fourteenth Amendments irrespective of whether any federal civil rights claims is also brought against their employer, which is not subject to *respondeat superior* liability under Section 1983.

78.

As employees or agents of a private contractor acting under color of law, said individual medical providers are liable for their unconstitutional conduct but are not entitled to assert the defense of qualified immunity that is available only to public officials.

36

79.

At all times relevant hereto, each of the individual medical providers and any other individual employees or agents of Defendant Genesys and Defendant Genesys itself, acted under color of law.

## COUNT FOUR

## 42 U.S.C. § 1983
## DELIBERATE INDIFFERENCE FOR THE LIFE OF ASHIA NARCISSE

80.

Plaintiff realleges and incorporates paragraphs 1-79 as if they were fully restated verbatim herein.

81.

As sheriff, Defendant Talton was deliberately indifferent to the serious medical needs of Ashia Narcisse in at least the following respects:

(a)    Failing to have a proper medical assessment performed;

(b)    Failing to have an evaluation of her medical condition; (c)
        Accepting her for booking into the Houston County Detention Center without a proper medical assessment and evaluation of her physical and mental health;

(d)    Failing to have Ashia Narcisse taken to a hospital before she was taken to the Houston County Detention Center;

(e)     Failing to treat the injuries sustained when Ashia was forcibly removed from her home by Deputies Barfield and Ross;

(f)     Failing to ensure that Ashia received proper nutrition and hydration while in custody at the Houston County Detention Center;

(g)     Failing to refer and send Ashia to the medical providers at the Houston County Detention Center as a result of her routinely refusing several meals;

(h)     failing to properly monitor Ms. Narcisse, in violating the policies of the Houston County Detention Center which required that detention staff make direct in-person checks of every inmate at staggered intervals of at least every thirty (30) minutes; and

(i)     Violating the policy of the Houston County Detention Center which required that a complete health appraisal be conducted on all inmates prior to being placed in the housing unit, which includes a physical examination and psychological screening.

82.

As Sheriff, Defendant Talton deliberately acquiesced to substandard medical care that is inconsistent with the standard of care and requirements of the contract with Defendant Genesys, thereby resulting in the denial of necessary medical treatment to Ashia Narcisse and proximately causing Ashia Narcisse to be deprived of her federal constitutional rights.

38

83.

Defendant Talton is personally liable in both his individual and official capacities for his own actions and decisions which violated the rights of Ashia Narcisse.

84.

Defendant Talton is liable for violating the Eighth and/or Fourteenth Amendment rights of Ashia Narcisse.

85.

Defendant Talton is not entitled to qualified immunity because his actions, omissions and decisions as set forth herein, violated clearly established law.

## **COUNT FIVE**

### **42 U.S.C. § 1983**
### **SUPERVISOR RELIABILITY OF SHERIFF TALTON FOR FEDERAL CIVIL RIGHTS VIOLATIONS BY HIS DEPUTIES AND EMPLOYEES**

86.

Plaintiff realleges and incorporates paragraphs 1-85 as if they were fully restated verbatim herein.

87.

Defendant Talton, as the supervisor of his deputies and employees is liable for the actions of any such deputies and employees which caused Ashia Narcisse's rights to be violated as set forth herein, including but not limited to physical abuse which

resulted in physical injuries to Ashia Narcisse, the failure to provide a medical assessment and medical and mental health evaluation of Ashia Narcisse and the failure to provide necessary medical care and Defendant Talton is also liable as a result of his deliberate indifference to Ashia Narcisse's constitutional rights and to the deprivation of such rights by his deputies and employees.

88.

To the extent that medical care for Ashia Narcisse was unconstitutionally denied due to the actions of Houston County Detention Center jailers and administrators who were employees of Sheriff Talton, he has supervisory liability under Section 1983 for their unconstitutional conduct of which he was aware that deprived Ashia Narcisse of her rights under the Eighth and Fourteenth Amendments.

89.

Defendants Deputy Barfield and Deputy Ross knew that Ashia had a serious medical need, particularly that Ashia was in fact, bi-polar and was having a bi-polar or other mental health episode on the night of December 26, 2021. These Defendants further knew that Ashia poseda serious risk of harm in that Ashia would become more aggressive, irrational, episodic and mentally unstable and required immediate medical attention, evaluation and medication.

90.

Defendants Barfield and Ross failed to provide or otherwise get necessary medical care for Ashia's serious medical need that posed a risk of serious harm by failing to take Ashia to a medical facility or otherwise have Ashia evaluated by a medical and mental health professional prior to Ashia's booking at Houston County Detention Center and while detained at the Houston County Detention Center. Defendants Barfield and Ross violated Houston County Sheriff's Office policies by intentionally failing to have Ashia evaluated and treated by a medical and/or mental health professional prior to the booking and while she was detained at Houston County Detention Center, and such failure constitutes deliberate indifference to the life of Ashia.

91.

Defendants' intentional failure to medically clear Ashia before admitting her as an inmate at the Houston County Detention Center on the night of December 26, 2021, was a material and fatal cause of Ashia's death.

92.

Defendants Barfield and Ross acted under color of law.

93.

Other jailers, detention officers, administrators and employees at the Houston County Detention Center failed to provide or otherwise get necessary medical care

for Ashia's serious medical and mental health need that posed a risk of serious harm by failing to have Ashia evaluated by a medical and/or mental health professional prior to her being booked at the Houston County Detention Center and while detained at the Houston County Detention Center.

94.

The jailers, detention officers, administrators and employees at the Houston County Detention Center violated Houston County Sheriff's Office and Houston County Detention Center policies by:

(a)     Failing to properly monitor Ashia;

(b)     Failing to perform required in-person checks on Ashia in her jail cell;

(c)     Failing to provide much needed physical and mental care by medical professionals;

(d)     Failing to ensure that Ashia was receiving proper nutrition and hydration especially in light of her routinely and consistently refusing meals; and

(e)     Failure to provide medical care for injuries sustained by Ashia, including but not limited to the sore/ulcer wound on her right leg.

Such failures constitute deliberate indifference to the life of Ashia.

95.

The jailers, detention officers, administrators, and employees at the Houston County Detention Center's intentional failures as set forth herein, was a material and fatal cause of Ashia's death.

96.

The jailers, detention officers, administrators and employees at the Houston County Detention Center acted under color of law.

97.

Pursuant to Georgia law, both the County and the Sheriff, who acts in his capacity as a county rather than state officer in providing medical care to inmates share the duty to provide adequate medical care to inmates in county jails.

98.

Because in this case, Sheriff Talton had the final authority on behalf of the County with respect to the medical care of inmates in the Houston County Detention Center, Defendant Houston County is liable for federal civil rights violations caused by Sheriff Talton's decisions as the County's policymaker and final decision maker regarding the provision of necessary medical services to inmates. The denial of such medical services to Ashia resulted in  Defendant Houston County's  liability for any such decision made by the Sheriff that caused the violation of Ashia's rights.

99.

Defendant Talton is personally liable, in both his individual and official capacities for his own actions and decisions which violated Ashia's rights.

100.

As Sheriff, Defendant Talton deliberately acquiesced in the failure to provide necessary medical care and in actions that fell below the applicable standard of care and that were in violation the requirements of the contract with Genesys thereby resulting in the denial of necessary treatment that proximately caused Ashia to be deprived of her federal constitutional rights.

101.

Given the deliberate indifference of Defendants Barfield, Ross, the jailers, detention officers, administrators, employees at the Houston County Detention Center and Sheriff Talton, said Defendants are liable for Ashia's pain suffering and mental anguish immediately prior to her death, and the the full value of Ashia's life.

## COUNT SIX

## 42 U.S.C. § 1983
## EXCESSIVE FORCE RESULTING IN SERIOUS INJURY TO ASHIA NARCISSE

102.

Plaintiff realleges and incorporates paragraphs 1-101 as if they were fully restated verbatim herein.

44

103.

Ashia Narcisse had a clearly established constitutional right to be free from the use of excessive force.   Defendants Deputy Barfield and Deputy Ross intentionally committed acts that violated Ashia's constitutional rights not to be subjected to excessive or unreasonable force while being taken into custody and arrested, specifically by forcibly removing Ashia from the home and causing severe injury to her right leg for which she was not provided necessary treatment.

104.

Defendants Deputy Barfield's and Deputy Ross' use of force as set forth herein was excessive, objectively unreasonable, unjustified, and violated Ashia's constitutional rights secured under the Fourteenth Amendment of the United States Constitution.   U.S. Const. Amend. XIV, § 1.   Defendants Deputy Barfield and Deputy Ross acted under color of law.

105.

Defendants Deputy Barfield and Deputy Ross are liable for the injuries, pain and suffering and any other damages caused as a result of their use of excessive, objectively unreasonable, and unjustified force on Ashia.

## COUNT SEVEN

### 42 U.S.C. § 1983
### DEFENDANT SHERIFF TALTON AND DEFENDANT HOUSTON COUNTY FAILED TO PROVIDE PROPER TRAINING AND EDUCATION FOR THEIR DEPUTIES AND DETENTION OFFICERS, AS WELL AS FAILED TO ENFORCE THE STATED POLICES AND PROCEDURES OF THE HOUSTON COUNTY SHERIFF'S OFFICE

106.

Plaintiff realleges and incorporates paragraphs 1-105 as if they were fully restated verbatim herein.

107.

Defendant Sheriff Talton and Defendant Houston County were and are responsible for, and are the final policymakers for, the supervision, administration, policies, practices, customs, and operations of the Houston County Detention Center at all times relevant to the allegations of this Complaint.

108.

The violation of Ashia's rights, both those guaranteed by the Constitution of the United States of America and by the Constitution of the State of Georgia, by Defendants and other Sheriff's office employees, jailers and administrators at the Houston County Detention Center, acting under color of the laws of the State of Georgia, caused Ashia Narcisse to be subjected to physical and mental abuse, deprivation of much needed medical and mental health care, and ultimately caused

46

the death of Ashia Narcisse in violation of Art. I, Section 1, Paragraphs I and XVII of the Constitution of the State of Georgia, and the Eighth and Fourteenth Amendments to the United States Constitution as enforced through 42 U.S.C § 1983 by Defendant Sheriff Talton and Defendant Houston County by failing to provide adequate and appropriate training and education for the deputies and personnel of the Houston County Detention Center regarding the handling, treatment, and medical needs of mentally ill inmates such as Ashia; allowing the deputies and personnel to violate Houston County Sheriff Office's policies and procedures regarding the handling and treatment of mentally ill inmates; failing to enforce polices and failing to properly discipline deputies and personnel, thus creating a culture in Houston County Sheriff's Office wherein violating citizen's rights has been tolerated.

109.

Defendant Sheriff Talton and Defendant Houston County are liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), for violating Ashia Narcisse's constitutional rights because their policies, customs and practices directly caused and were the "moving force" behind Ashia's death.

**COUNT EIGHT**

**PUNITIVE DAMAGES**

110.

Plaintiff realleges and incorporates paragraphs 1-109 as if they were fully restated verbatim herein.

111.

The conduct of the individual Defendants, including Defendant Genesys, constitutes willful misconduct, malice, fraud, wontedness, oppression, or that entire want of care which would raise the entire presumption of conscious indifference to consequences.   Therefore, punitive damages should be assessed against these Defendants in order to penalize, punish or deter them.

**E.  DAMAGES**

Plaintiff realleges and incorporates paragraphs 1-111 as if they were fully restated verbatim herein.

112.

As a direct and proximate result of the aforementioned acts, omissions, and negligence of the Defendants, Ashia Narcisse died a premature death at the age of 34 and experienced conscious pain and suffering before her death, including both physical and mental suffering, and her estate incurred funeral and other necessary expenses, and Plaintiff is entitled to recover the full value of Ashia's life, both

economic and noneconomic, compensatory damages for the aforementioned losses and injuries, and punitive damages, to the extent such damages may be awarded, in an amount to be proven at trial and determined by a fair and impartial jury.

## F.  PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff prays as follows:

a)      That process and summons be issued to Defendants as required by law;

b)      That this Complaint be served on all Defendants;

c)      That Plaintiffs have a trial by twelve fair and impartial jurors;

d)      That judgment be entered against Defendants for the full value of Ashia Narcisse's life;

e)      That judgment be entered against Defendants for Ashia Narcisse's pain, suffering, and mental anguish immediately prior to her death;

f)      That Plaintiff have judgment against Defendants for funeral and burial expenses in the amount of $1,362.29;

g)      That Plaintiff recover all damages available under Georgia and federal law;

h)      That Plaintiff be awarded punitive damages against the individual Defendants pursuant to O.C.G.A. § 51-12-5.1;

i)      That Plaintiff have trial by jury on all issues so triable;

j)      That Plaintiff recover all interest permitted under Georgia law;

k)     That Plaintiff recover reasonable attorney's fees and expenses of

litigation; and

l)     That Plaintiff be granted such other and further relief as this Court may

deem just and proper.

This 20th day of December, 2023.


                                         /s/ Virgil L. Adams
                                         VIRGIL L. ADAMS
                                         Georgia State Bar No.: 004625
                                         D. JAMES JORDAN
                                         Georgia State Bar No.: 404465
                                         DAWN MAYNOR LEWIS
                                         Georgia State Bar No.:479696
                                         ASHLEY B. PITTS
                                         Georgia State Bar No.: 481759

ADAMS, JORDAN, & HERRINGTON, P.C.
915 Hill Park, Suite 101
Macon, Georgia  31202
Phone:     (478) 743-2159
Facsimile: (478) 743-4938
vadams@adamsjordan.com
jjordan@adamsjordan.com
dlewis@adamsjordan.com
apitts@adamsjordan.com